UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERRELL COOK,<br>   *Plaintiff*, | :<br>:<br>: |
| v. | :    Case No. 3:19cv1982 (MPS) |
| BRENDAN PHILLIPS, et al.,<br>   *Defendants*, | :<br>:<br>: |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     The plaintiff, Jerrell Cook, brought this civil rights action against Stamford police officers related to an arrest that occurred on January 8, 2019. Compl., ECF No. 1. The Court referred the plaintiff's complaint to a U.S. Magistrate Judge for a recommended initial review ruling. ECF No. 10. Magistrate Judge Spector subsequently recommended dismissing some claims and terminating some defendants as parties to this action. Recommended Ruling, ECF No. 11 at 8-9. But Judge Spector also recommended permitting plaintiff to proceed with the following claims against defendants Derocco, Leachan, and Phillips: (1) a Fourth Amendment search and seizure claim; (2) a Fourth Amendment excessive force claim; and (3) state law assault and battery claims. *Id.* at 8. The Court adopted Judge Spector's recommended ruling in its entirety. ECF No. 14.

     The remaining defendants, Officers Derocco, Leachan, and Phillips, have filed a motion for summary judgment on all remaining claims. Defs.' Mot. for Summ. J. ECF No. 37. This motion asserts that: (1) plaintiff cannot establish the merits of his constitutional tort claims; (2) the defendants are protected by qualified immunity with respect to plaintiff's constitutional tort claims; and (3) the defendants were statutorily justified in their use of force with respect to plaintiff's state law tort claims. *Id.* For the reasons that follow, the defendants' motion for

summary judgment is DENIED.

**FACTS**[1]

The claims brought in this action pertain to an incident in which the defendants arrested plaintiff. ECF No. 1 at 3-6. On the night of January 8, 2019, a confidential informant told Linnehan that someone was actively selling cocaine at the intersection of Pacific Street and Henry Street. ECF No. 37-1 at 2, ¶¶ 5-6. The alleged drug dealer was described as a tall, black man with a "thin beard and small goatee," who was wearing dark colored clothing and a baseball cap. *Id.* at ¶ 8. The confidential informant had previously provided Stamford police officers with "credible and reliable information," and the intersection of Pacific and Henry was known to be a "high drug and crime area." *Id.*, ¶¶ 7, 9.

After receiving the confidential informant's tip, Linnehan began surveilling Pacific Street from an unmarked car with DeRocco and Phillips. *Id.* at 2-3, ¶¶ 11-12. From their parked car, the defendants spotted plaintiff walking northbound on Pacific Street. *Id.* at 3, ¶ 17. The defendants immediately recognized the plaintiff and knew him to be "the subject of numerous prior narcotics investigations and arrests by Stamford police officers." *Id.*, ¶¶ 17-18. Further, plaintiff

---

[1] The facts noted within this order are drawn from the complaint and the defendants' Local Rule 56(a)(1) Statement of Undisputed Material Facts and its supporting exhibits. ECF No. 37-1. Plaintiff has filed a response to the defendant's summary judgment motion. ECF No. 42. But this filing does not include a Local Rule 56(a)(2) State of Facts in Opposition to Summary Judgment. *Id.*

After being directed to do so by the Court, the defendants filed a Notice to Self-Represented Litigant, as required by Local Rule 56(b). *See* ECF No 39; ECF No. 40. This Notice informed plaintiff of the requirement to support denials of the movant's version of facts with evidence. The Notice also warned plaintiff that a failure to submit evidence in support of his denials of fact could result in the Court's granting the defendants' summary judgment motion if it showed that the defendants were entitled to judgment as a matter of law.

Because plaintiff has not complied with Local Rules, all material facts set forth in the defendants' 56(a)(1) Statement of Fact are deemed admitted to the extent that the factual assertions are not undermined by the exhibits submitted in support of summary judgment. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.")

matched the confidential informant's description of the person allegedly selling drugs at the intersection of Pacific and Henry. *Id.* at 4, ¶ 21.

What happened next is disputed in sworn statements that the defendants have submitted in support of their request for summary judgment and in the plaintiff's deposition testimony.

**Defendants' Affidavits**

In support of summary judgment, Linnehan and DeRocco have submitted affidavits recounting what happened on the night of plaintiff's arrest. ECF No. 37-2; ECF No. 37-3. According to these affidavits, plaintiff appeared to be holding a clear knotted plastic bag in his hand as he walked toward the defendant's unmarked car. ECF No. 37-1 at 4, ¶¶ 22-23. Through training and experience, the defendants knew that drug dealers often use such bags to package narcotics. *Id.*, ¶ 24.

When plaintiff walked to within approximately five feet of the defendants' car, he appeared to notice their presence. *Id.*, ¶ 25. Subsequently, plaintiff put the plastic bag that he had been holding into his mouth. *Id.*, at 5, ¶ 26. Through training and experience, the defendants knew that drug dealers sometimes swallow narcotics in their possession when they believe that they are about to be detained by police. *Id.*, ¶ 27.

The defendants exited their car to approach plaintiff. *Id.* ¶¶ 28, 30. Plaintiff "tried to quickly walk away from them." *Id.* ¶ 30. As he walked away, Plaintiff appeared to be chewing, and attempting to swallow, the baggie that he had just put in his mouth. *Id.*, ¶ 31. The defendants ordered plaintiff to stop walking, but plaintiff ignored this command. *Id.*, ¶ 32. The defendants then caught up to plaintiff and ordered him to open his mouth. *Id.* at 6, ¶ 33. But plaintiff refused. *Id.*

At this point, the defendants were concerned that plaintiff was destroying evidence of a

3

crime and putting his own safety at risk by swallowing what they thought to be cocaine. *Id.*, ¶ 34. So DeRocco grabbed plaintiff by the jaw while Linnehan "touched the front of [plaintiff's] face in an attempt to manipulate any narcotics inside his mouth so that they could be removed." *Id.*, ¶¶ 35-38. In response, plaintiff bit Linnehan's finger and lowered his body to the ground. *Id.* at 6-7, ¶¶ 38-40. Phillips then punched plaintiff in an effort to gain his compliance. *Id.* at 7, ¶ 41.

Eventually, the defendants were able to place plaintiff in handcuffs. *Id.*, ¶ 42. But, by this time, plaintiff had already swallowed whatever had been in his mouth. *Id.*, ¶ 43.

Plaintiff was criminally charged with counts of interfering with an officer and assaulting an officer. *Id.* at 8, ¶ 53. Eventually, plaintiff pled guilty to the single count of interfering with an officer. *Id.*, ¶ 54.

**Plaintiffs' Deposition Testimony**

In support of summary judgment, the defendants have also submitted a transcript of plaintiff's deposition testimony. ECF No. 37-4; ECF No. 48.[2] According to plaintiff, on the night of his arrest, his girlfriend dropped him off on Pacific Street so that he could talk with a friend. ECF No. 48 at 29-30. Although plaintiff admits to drug use, and appears to concede that he has sold drugs in the past, he denies that he was selling drugs on January 8, 2019. *Id.*, at 42-43, 55, 68-69.

As plaintiff walked to meet his friend, he passed a parked car in which three white men—the defendants—were seated. *Id.* at 33. Plaintiff surmised that these white men were police officers. *Id.* at 33.[3]

---

[2] Initially, the defendants submitted excerpts of plaintiff's deposition testimony. ECF No. 37-4. To ensure that it had a full and accurate understanding of the testimony that the defendants relied upon in support of summary judgment, the Court later ordered the defendants to submit the entire deposition transcript. ECF No. 47. The defendants promptly complied with this order. ECF No. 48.

[3] Plaintiff insinuates, but does not explicitly testify, that it would have been unusual for three white people to gather on that part of Pacific Street unless they were police officers. ECF No. 48 at 33.

4

After plaintiff walked past the defendants' car, he heard its doors open. *Id.* at 41. At this point, plaintiff knew that he would be stopped by the police. *Id.* Plaintiff explained: "Whenever [police] see somebody who got a record in that neighborhood at any time, they are going to jump out at you, pat, frisk you and … open your mouth … they always do." *Id.* at 41-42.

DeRocco approached plaintiff from behind and, without warning, placed him in a chokehold. *Id.* at 43. As plaintiff struggled to breathe, Linnehan reached his hand into plaintiff's mouth. *Id.* at 45-46, 60-61. Next, Phillips repeatedly punched plaintiff in the face. *Id.* at 51-52, 55. After being choked for approximately ten seconds, plaintiff fell unconscious. *Id.* at 49-50. Plaintiff denies biting Linnehan while conscious but cannot attest to what may have happened when Linnehan's hand was in his mouth while he was unconscious. *Id.* at 46-47.

After plaintiff regained consciousness, he was taken to the police station. *Id.*, at 58. Around this time, Phillips told plaintiff that he and his father were both "scum bags." *Id.* at 59. And the defendants began to assert—falsely—that plaintiff had swallowed narcotics. *Id.* at 59-60.

In jail, plaintiff asked to be taken to the hospital. *Id.* at 63-64. And, after a few hours, officers granted this request. *Id.* at 64. At the hospital, a technician performed an X-ray showing that plaintiff did not have a baggie of drugs in his stomach. *Id.* at 66.[4] However, a medical professional did detect cocaine and marijuana in plaintiff's bloodstream. *Id.* at 68-69. Plaintiff attributes this finding to recent drug use. *Id.*

At the hospital, plaintiff was not diagnosed with traumatic injuries. *Id.* at 71. But doctors did note cut/abrasion injuries to his lip. *Id.* at 70-71. Doctors also appear to have determined that plaintiff fainted. *Id.* at 72-73. Plaintiff attributes his loss of consciousness to an inability to

---

[4] Plaintiff did not retain a record of his alleged X-ray examination. ECF No. 48 at 67-68.

5

breathe. *Id.* at 79.

**LEGAL STANDARD**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P. The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord.* 554 F. 3d. 255, 266 (2d Cir. 2009). He or she cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). In deciding a motion for summary judgment, the court must draw all reasonable inferences from the evidence in favor of the non-moving party. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

**DISCUSSION**

The defendants contend that they are entitled to summary judgment on plaintiff's § 1983 claims because: (1) the undisputed facts do not permit an inference that they violated plaintiff's Fourth Amendment rights; and (2) they are protected by qualified immunity. ECF No. 37 at 1. The defendants further contend that they are entitled to summary judgment on plaintiff's state law assault and battery claims because they were statutorily justified in their use of force. *Id.* at 1-2. The Court finds that the defendants' summary judgment filings present questions of material fact on which a reasonable juror could return verdicts in plaintiff's favor. Thus, the Court will

deny the motion for summary judgment.

      A.      **Search and Seizure Claim**

The Court has permitted plaintiff to proceed with a Fourth Amendment claim against the defendants on the theory that they unlawfully detained and searched him. ECF No. 11 at 6-7. The Fourth Amendment protects the public from "unreasonable searches and seizures." U.S. Const., amend. IV. "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F. 4th 129, 138 (2d Cir. 2021) (en banc) (internal quotation marks and citation omitted). As an exception relevant to this case, the U.S. Supreme Court has long-permitted brief, investigatory "*Terry* stops" when a policer officer has "a reasonable basis to think that the person to be detained is committing or has committed a criminal offense." *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (internal quotation marks and citation omitted); *see also Terry v. Ohio*, 392 U.S. 1, 22-25 (1968).

The defendants argue that they had a reasonable basis to think that plaintiff was committing, or had committed, a crime just prior to their search of his person. ECF No. 38 at 6-7. In support of this argument, they rely upon undisputed evidence that a "reliable" informant told them that a person matching plaintiff's appearance was actively selling drugs in a high-crime area, and that they recognized plaintiff as someone who had a history of drug-related investigations and arrests. ECF No. 37-2 at 2-3, ¶¶ 4-6; ECF No. 37-3 at 2-3, ¶¶ 5-11. Considering just these undisputed facts,[5] it is not clear that the defendants had the requisite basis to conduct a *Terry* stop. *See Dancy v. McGinley*, 843 F.3d 93, 109 (2d. Cir. 2016) ("[M]ere

---

[5] The defendants assert that they had additional reasons to suspect plaintiff of criminal activity. Most significantly, they claim to have witnessed plaintiff swallowing a baggie of what looked to be cocaine. ECF 37-2 at 3, ¶¶ 7-10; ECF No. 37-3 at 4, ¶¶ 12-17. However, plaintiff's deposition testimony creates a dispute of fact as to whether he engaged in this suspicious conduct.

7

presence near someone who somewhat matches a vague description is not a reasonable basis for suspicion.") Even if they did, however, they would not be entitled to summary judgment, because the defendants ventured well beyond police conduct permitted at a *Terry* stop. When conducting a *Terry* stop, police officers may detain and question a suspect to the extent "necessary to confirm or dispel the reasonable suspicion that justifies the stop in the first place." *Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017). In addition, when they have "reason to believe that the detained individual is armed and dangerous, [they] may conduct a patdown search for concealed weapons." *U.S. v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008). Police *are not* permitted to effectuate a *Terry* stop by sneaking behind a suspect and placing him or her in a chokehold, which is the version of events supported by the plaintiff's deposition testimony. *See Tuuamalemelo v. Greene*, 946 F. 3d 471, 477-78 (9th Cir. 2019) ("There is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment.") And a lawful *Terry* stop does not authorize officers to conduct a non-consensual search of a suspect's bodily cavities for evidence of a crime. *See Adams v. Williams*, 407 U.S. 143, 146 (1972 ("The purpose of [a *Terry*] search [for weapons] is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.") Because the search and seizure described in plaintiff's deposition testimony is far more intrusive than any actions allowed in a mere *Terry* stop, the defendants must rely on something more than just reasonable suspicion to establish an entitlement to summary judgment.

   The defendants suggest—in the context of addressing plaintiff's excessive force claim— that the Fourth Amendment permits a forcible search of a suspect's mouth when police officers witness him or her attempt to swallow illegal drugs. ECF No. 38 at 9-10. The Court agrees with this suggestion. *See Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 313-14 (S.D.N.Y. 1998)

(collecting cases in which courts have affirmed the constitutionality of mouth searches when a suspect was witnessed attempting to swallow evidence of a crime). But the defendants' summary judgment filings present an unresolved question of fact as to whether plaintiff was swallowing suspected drugs at the time of his arrest. In affidavits, Linnehan and DeRocco claim that the plaintiff was doing just that. ECF 37-2 at 3, ¶¶ 7-10; ECF No. 37-3 at 4, ¶¶ 12-17. But, in his deposition testimony, plaintiff clearly conveyed that he was not. ECF No. 48 at 41-42, 59-60, 66. The Court cannot resolve this factual dispute through a summary judgment ruling.

As a final argument, the defendants contend that they could search plaintiff's mouth incident to his lawful arrest. ECF No. 38 at 7-8. This argument has surface logic. Plaintiff was held on multiple criminal charges and eventually pled guilty to the offense of interfering with law enforcement. ECF No. 48 at 57-58. Once they lawfully arrested him for a crime, the defendants could search plaintiff's mouth. *See Spicer v. Burden*, 564 F. Supp. 3d 22, 30 (D. Conn. 2021) ("Upon arresting a suspect the police may engage in a search incident to arrest without additional grounds to believe that the suspect has a weapon, contraband, or evidence on their person.") It is not clear, however, whether the defendants searched plaintiff's mouth before or after his lawful arrest.

The search and seizure described in plaintiff's deposition testimony occurred suddenly and ended before plaintiff would have had any opportunity to interfere with law enforcement. ECF No. 48 at 41-45. While plaintiff's guilty plea may estop him from arguing that he was cooperative with law enforcement throughout his entire interaction with the defendants, it does not preclude a finding that the defendants violated his Fourth Amendment rights prior to a lawful arrest. That is, the guilty plea does not indicate *when* in relation to the search of the plaintiff's mouth he interfered with the officers and, therefore, could be lawfully arrested. Thus, the

defendants have not shown that plaintiff cannot succeed on his unlawful search and seizure claim. *See Sanabria v. Martins*, 568 F. Supp. 2d 220, 226 (D. Conn. 2008) (finding that a plaintiff's guilty plea will not estop him or her from bringing a § 1983 claim "so long as the plaintiff can prevail" on the § 1983 claim "without negating an element of the offense." (internal quotation marks and citation omitted)).

### B. Excessive Force Claim

The Court has permitted plaintiff to proceed with a Fourth Amendment claim against the defendants on the theory that they utilized excessive force against him. ECF No. 11 at 6. "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To evaluate the reasonableness of an officer's use of force, courts should consider the particular facts and circumstances of a case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Defendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that Plaintiff may not have sustained serious long lasting harm is not dispositive." *Graham v. City of New York*, 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013).

Here, the defendants contend that they were permitted to forcefully search plaintiff's mouth because he had "no constitutional right to secrete evidence." ECF No. 38 at 9. Setting aside disputes about the degree of force utilized by the defendants (*i.e.*, whether DeRocco choked plaintiff into a state of unconsciousness), the validity of the defendants' summary judgment argument is premised on the notion that plaintiff seemed to be swallowing drugs prior

to the defendants' use of force. However, plaintiff has denied that he was swallowing drugs prior to his interaction with the defendants. Assuming that plaintiff was—as he claims—simply walking down the street when confronted by the defendants, then a jury could easily conclude that the defendants' use of force was unreasonable. *See Graham*, 928 F. Supp. 2d at 619-20 (collecting cases in which allegations of significant force applied against non-resisting suspects supported findings of excessive force). Thus, the defendants have not shown that plaintiff cannot succeed on his excessive force claim.

C.  **Qualified Immunity**

The defendants also contend that they are entitled to summary judgment on plaintiff's § 1983 claims because they are protected by qualified immunity. ECF No. 38 at 11-13. Qualified immunity shields state officials from § 1983 liability unless evidence shows: "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted).

For reasons just noted, the Court finds that the evidence in the record—when viewed in the light most favorable to plaintiff—does not preclude a finding that the defendants violated his Fourth Amendment rights. And, with regard to the second prong of qualified immunity analysis, the defendants advance nothing more than a brief, conclusory argument that "[i]t was reasonable for DeRocco, Linnehan, and Phillips to believe their conduct was lawful." ECF No. 38 at 13. In any event, no reasonable officer could believe that it was lawful to conduct a *Terry* stop by sneaking behind a suspect and placing him in a chokehold.

In his deposition testimony, plaintiff asserted that he was simply walking down the street when the defendants suddenly choked and punched him and forcefully placed a hand in his

11

mouth. While the record might be construed as providing the defendants with a basis for performing an investigatory *Terry* stop of plaintiff, the conduct alleged in plaintiff's deposition testimony obviously exceeded anything permitted within the scope of a mere *Terry* stop. *See Bailey*, 743 F.3d at 332 (Police officers may "temporarily to detain a person and [ ] pat him down for weapons" in the course of a Terry stop.) Thus, the defendants are not entitled to summary judgment on the basis of qualified immunity.

### D. Assault and Battery Claims

The Court has permitted plaintiff to proceed with state law assault and battery claims based on the same allegations of fact supporting his constitutional excessive force claim. ECF No. 11 at 6. As a preliminary matter, the defendants appear to argue that plaintiff did not actually bring these state law claims in his complaint. ECF No. 38 at 13. But in a section of the complaint titled "claims for relief," plaintiff asserts that he brings "assault and battery" claims against the defendants. ECF No. 1 at 7. And he further asserts that the defendants' "actions violated Connecticut state law." *Id.* Thus, the Court continues to construe plaintiff's *pro se* complaint as bringing state law assault and battery claims against the defendants.

The defendants go on to contend that they are entitled to summary judgment because their use of force was justified by C.G.S. § 53a-22(b). This statute provides:

> [A] peace officer … is justified in using physical force upon another person when and to the extent that he or she reasonably believes such use to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

Connecticut appellate courts have interpreted C.G.S. § 53a-22(b) as permitting a police officer's

use of force essentially to the same extent as permitted by the Fourth Amendment. *See State v. Smith*, 73 Conn. App. 173, 198 (2002) (citing U.S. Supreme Court Fourth Amendment precedent—specifically, *Graham v. Connor*, 490 U.S. 386 (1989)— to support its interpretation of statute).

The defendants' summary judgment argument fails because it is premised on a version of facts at odds with plaintiff's deposition testimony. Since the Court has found that a genuine issue of material fact exists with respect to plaintiff's excessive force claim, "it follows that similar questions arise as to the reasonableness of [the defendants'] use of force under state law." *Anglero v. City of Hartford*, 3:16-cv-1425(AVC), 2020 WL 13250192, *11 (D. Conn. Feb. 19, 2020). Thus, the Court denies the defendants' request for summary judgment on plaintiff's state law assault and battery claims.

## Conclusion

The defendants' Motion for Summary Judgment, [**Doc. No. 37**], is **DENIED**. This case shall proceed for trial on all claims that survived the Court's initial review order.

**SO ORDERED** at Hartford, Connecticut, this 18th day of January 2023.

/s/
Michael P. Shea, U.S.D.J.